20011-1582 Ocean Innovations v. Gulf Coast Floating Docks Appellant Mr. Reid Good morning, your honors. I'm here on behalf of Appellant Aram Reid. Aram Reid is in a position of needing to appeal errors that have been made by the trial court in the Northern District of Ohio over a period of 8 years. We have quite a spread of time in that respect. This case involves 5 patents relating to floats that can be assembled in certain ways to make drive-on docks. There are really only 2 patents that are at issue here, and indeed only 3 claims. That is correct. The lower court only looked at claims 1 and 15 of the earliest patent, the 013 patent, and claim 28 of the 113 patent. In connection with the lower court's ruling, I wanted to begin challenging the error made by the court in defaulting the parties. The court had 2 defaults in the case after approximately 6 or 7 years of litigation. It defaulted the nominal parties, defendants Roy Ahearn, Versadoc, Partnership, and the basis for that default was that the second supplemental complaint had not been answered. What are the consequences of these defaults? As I understand it, we have a summary judgment on infringement, we have a summary judgment on invalidity. Everybody seems to agree that those issues are open on appeal without regard to the default. What is the practical significance of the default? That you didn't get a trial on damages? Is that what it is? That is in part correct, Your Honor. The summary judgment motions were brought in 2004. The default occurred 6 years after the fact. What other consequences did the defaults have other than a trial on the damages? The defaults had the consequence of preventing defaulted defendants from raising their affirmative defense of inequitable conduct, on sale bar, and other invalidity defenses. There was a strong on sale bar case in the case. The district court said with respect to the on sale bar that you didn't raise it in a timely way, right? The court was incorrect in that respect. The case management order ended in 2004. Subsequent to 2004, there was a new generation of product, the v-floats, that required different claim construction, and so that did not apply. And you say you had an inequitable conduct defense that was foreclosed? That is correct. That was something that was asserted by the defendants in the preliminary injunction hearing that occurred in 2010. Wait a moment. Only in the preliminary injunction hearing? As I understand the local rules here, the infringement and validity contentions had to be set forth at an early stage of the case. Did you set forth an inequitable conduct defense at that point? In 2004, under the portion of the local patent rules that were adopted, the disclosures had to do with the party's infringement contentions, invalidity contentions. There was no requirement to disclose inequitable conduct. The defendants had brought motions to dismiss on jurisdictional grounds during the time period in which the summary judgment motions were brought in 2003 and 2004, and so the defaulted defendants were not able to put in an answer at the time or put in the inequitable conduct defense. Do you address that in your blue brief? Do you say that the default prevented you from raising the inequitable conduct defense? I don't think so. I don't think that was in your brief. It would be set out very generally in a statement of facts, but the issue was not specifically addressed in the brief, given the plurality of issues that are appealed from. So in terms of the damages, what's the consequence? Well, as a result of summary judgment rulings that came down in 2009, there were four accused docs, and that was the only number of record in the case, and damages on four accused docs is fairly nominal. The court used, in connection with the default stipulation, an assertive stipulation between the parties. Right, and Judge Dyke's question, I think, was predicated on an assumption that the stipulation is binding. Let's assume that it is. And that stipulation did not take into account direct and indirect infringement, so that the plaintiff still needed to link up the accused assemblies, which it could not do based on that stipulation. The patents in suit are not infringed by a mere sale of a float unit, as done by a dependent air and marine. You have to assemble these floats in certain configurations for there to be infringement, and the stipulation reached during the mediation only was directed to the number of estimated floats. Well, but this is the stipulation that's found at 2894 of the appendix, correct? Yes. And it says, 100,000 flotation units, it is agreed that 100,000 flotation units have been incorporated into docs sold by the versaduct entities referred to in the Second Amendment complaint, that plaintiffs have accused as infringing the patents. So, it seems to me the stipulation links the flotation devices to the accused products, correct? In part. Subsequently, that count also included double floats, and the lower court excluded double floats from the calculation and denied plaintiffs' motion to bring in the double floats. I thought the double floats weren't accused in the complaint. I thought that was the reason the district court refused to extend the injunction to the double floats. Subsequently, that was correct. Initially, the court's preliminary injunction did include the double floats, and after subsequent briefing and motions, the lower court eventually expressly excluded the double floats from the injunction. Well, apart from the number of floats, what other issue needed to be addressed, in your view, at a damages trial that was not addressed satisfactorily in the truncated procedure that the district court utilized? Well, at that juncture, the three claims that were, or the configurations that were accused of infringement and summary judgment, the four accused structures were no longer made thereafter. So, there were different assemblies that were not infringing, and one would have to, in a damages trial, have account for those accused assemblies. And one would also have to go into the issue of what a reasonable royalty was, and more importantly, a big component of plaintiffs' asserted damages was lost profits. They only sought lost profits, right? Yes. So, reasonable royalty really isn't in the case, right? Pardon? So, reasonable royalty wasn't something that would have been litigated. It would have been entirely, they put their eggs in the lost profits basket. That is correct. And there were other competitors in the market in connection with the damages trial, and there are numerous non-infringing assemblies made by defendant-era marine, a substantial number of walkways and other things that do not infringe. And so, a damages trial would have established that lost profits could not have been obtained based on the evidence made of record for the lower court. How was the lost profits computed? The lost profits was determined by the affidavit of plaintiff's principal, Alan Eva, on internal documentation. Defendants were not permitted to obtain discovery on any of that financial information of plaintiffs. So, it's entirely conclusive. Because of the default. Pardon? Because of the default. Technically, because discovery had been closed in 2004, and even though the complaint was subsequently amended, the court only reopened discovery on a limited basis. They allowed era marine some limited discovery on financial information and subsequently denied... If discovery was not reopened, did you have any basis for challenging the profit calculation? If discovery had not been opened, certainly if there was a trial, one would have the opportunity of examining the proponent of the asserted damages, the plaintiff's principal, Alan Eva. Now, you are into your rebuttal time, Mr. Remus. Would you like to save it? Yes, I would, Your Honor. Very well. Thank you. Thank you. Mr. Kinder? Good morning, Your Honor. Good morning. This is mostly a case that's not about patent law. This case is mostly about civil procedure and the district court's authority to maintain and control the proceedings in this courtroom. And there are three rulings that I think are important to discuss today. The first one you spent most of the previous time period talking about, the default of Ahern and Versadach. There was also the default of ERA for a discovery as a discovery sanction. And finally, there was the injunctive order that I want to bring up about my cross appeal. Since there's no judgment against Dabrowski, this may be not worth spending much time on. But just as a matter of tidiness, there was no default against Dabrowski. That's correct. So he fell only on the summary judgment ruling? Is that how he went his way into the final judgment? Yes, he had the summary judgment of validity infringement. And then there was an injunction issued against him. And then we settled with him for no damages. But he's an appellant here on liability, correct? I mean, he's not out of the case. I think that's correct. I think he's not out of the case. Regardless of what happens with the default, Dabrowski is enough to keep the summary judgment issue before this court, correct? Yes, I think so. What about personal jurisdiction? There does seem to be authority that where you have a single transaction which was solicited, where the contact was solicited by the plaintiff and the sale was solicited by the plaintiff, that maybe that's not enough for long-term jurisdictional purposes under the due process process. I was under the impression that we had fairly extensive contact with the state of Ohio. Yes, we used an alias. There's no question about that. But there was extensive email correspondence between Mr. Leonard, who was a Versadoc partner. The simple procedure doesn't have the entrapment concept. That's correct. That's correct. That's for the criminal side. So entrapment cases would be irrelevant. That's correct. Even though you cited a couple of cases. Entrapment cases don't apply. But there are cases that say that you can't get personal jurisdiction by trickery. There are cases like that. Do those cases involve dragging the defendant over the state line? Well, we didn't drag him over the state line. They all came quite willingly to Ohio. There was a sale of a dock that's pronounced Winkies. There was a sale of a dock at Winkies. Mr. Dabrowski put the dock together, picked up and delivered it according to instructions from Mr. Ahern, and delivered it and assembled it according to Mr. Ahern's instructions in Ohio. The transaction was initiated by plaintiff. That's correct. We said we'd like to buy a dock. We didn't think he'd sell one to us directly. And you said we'd like you all to install it. Well, that's what they do. I mean, when you buy a dock... Well, if you had said we can install it, we've got people here, that's no problem, and presumably they wouldn't have done it. But you wanted them... We wanted them to do their usual thing. Now, let's assume there are cases, as I think Josh alluded to, that say that you can't get personal jurisdiction if, for example, the plaintiff makes a request to purchase something and asks that the thing be sent to New York and the defendant sends the product to New York and not having done any other business in New York, and the plaintiff says, Aha, gotcha, you've done business in New York. Let's assume that that principle not only is valid, but also applies even in a case in which following the initial sale there is follow-up action in New York, such as maintaining the equipment that's been sold. What distinguishes this case, if anything, from that sort of case, which is to say what more do you have other than the Winkie's sale and the Winkie's installation? Well, there was... Wouldn't you start by differentiating installation from a follow-up service call? Well, this is... You were buying a service as well as a product? We were buying a dock assembled and installed. We were buying a complete dock. Right. And a pile of flotation units was of no jurisdictional value to us because the pile of flotation units may or may not infringe depending on how they are assembled. Okay, but I'm asking you to assume for the moment that there's no difference between purchasing one time single item and purchasing an item which is subsequently either installed or serviced or there's subsequent activity connected to that single purchase. Assume that's true. Is there more here than that one sale and the follow-up? Well, there is... There was an interactive website and there is... And I regret that I do not have for you, but there is a... In the last year or so, the Ohio Supreme Court has issued a ruling saying that its long-arm jurisdiction reaches websites that you can place an order and purchase a document. And I will find that citation and send it to you in a letter. Well, this is really a due process issue more than an Ohio long-arm statute issue, isn't it? Well, if the Ohio Supreme Court has addressed the issue, of course, they must consider the due process arguments as well, and I think they have. So, yes, it's one that this court has to consider. I think there are cases about interactive websites which suggest that if the plaintiff approaches the defendant on the interactive website and procures a sale by that mechanism, that that's not sufficient. I think there's a case in the First Circuit called Phillips. There may be others as well. I'm fairly certain that this Ohio Supreme Court case fits very clearly... I know it's not binding, but it is the Ohio long-arm to the extent that it's... Counsel, do you have more? I feel like you're not fully answering Judge Price's question. Didn't the district court rely on a statement by Mr. Dombrowski to the fake buyer that he was the local area installer? Well, yes, he did. Isn't that more evidence? He said he had a warehouse and he said he was the local installer. Do you understand the district court to have credited those? These are the statements in the EVA affidavit, I believe, correct? That we're talking about now? Yes. Right. Now, do you understand the district court to have credited those statements in the course of his jurisdictional ruling? I thought that he relied more specifically on Dombrowski's deposition and the statements that... Well, Dombrowski doesn't really say very much in his deposition. It's helpful. I read it, and I didn't find that helpful. They did come from statements that were hearsay, if you will, statements he made to EVA. Right. But my question is, did the district judge rely on those statements, in your view, in reaching his jurisdictional... I thought he relied mostly on the fact that the Versadoc partnership had done business in Ohio and that the single transaction of the Versadoc partnership was sufficient to trigger the personal jurisdiction over not only it but the partners. Well, that's the problem, Steve, the thing that brings us back to whether it's a single transaction. I understand. The district court makes a statement, and this is in AD 34, which I found puzzling. About three lines from the bottom, talking about the Versadoc partnership and general partners. They have availed themselves of the privileges acting in Ohio by being directly involved in the promotion and sale of allegedly infringing docs to a number of purchasers in Ohio. What are these number of purchasers? That popped up somewhat surprisingly to me, at least. I think that we found the Winkie's Doc only and that there were representations made by Leonard that the defendants had a number of customers and docs in Ohio. Well, those representations were, again, through EVA's affidavit. Correct. And so, do you interpret that language as, in effect, crediting EVA's affidavit? It must. Okay. Thank you. On another subject, do you understand the default judgment to have been the basis for the enhanced damages, or do you view the enhanced damages determination as being independent of the default judgment?  The enhanced damages stands on both legs. I think that because the default presumes everything in the complaint is true, that you could stop there. Well, not in other cases you can't, because you don't presume things relating to damages to be true in the complaint as a result of the default. But you could, well, the nature of the infringement was pled as willful, and that would be assumed true. To the extent that it relates to damages, that's not the rule. You cannot presume the default. Wait, don't interrupt me. Okay, I'm sorry. You don't presume that allegations of the complaint relating to damages are true as a result of the default. And looking at the district court's decision here, I don't see that the determination of the enhanced damages is tied to the default. Is there something that I'm missing here? I believe that the willful, the EVA declaration and the motion for default judgment set out a long recitation of the willful nature of the infringement, and that was not challenged below. They challenged the litigation misconduct, but they never challenged the willful infringement. When you talk about the EVA declaration, you're talking about the declaration that's found at 3306 through 11? This is dealing with Mr. Ahern's knowledge through the patents, et cetera? Yes. Okay. Yes. There are lots of declarations. That's the one you're talking about. Forgive me. I've been at this for so long that they do blur a little. I can certainly understand that. Well, that's all right. If we're talking about the same declaration, I just wanted to make sure that we were. In the motion to vacate the default judgment, BERSADAC made no mention of the willful infringement. We raised the issue in our motion for default judgment, which was ECF 318, and beginning at page 3288, the defendant's opposition in ECF 320 doesn't argue anything about the exceptional case at all? Well, maybe not in connection with default judgment, but they did oppose the enhanced damages on the ground that there was no willfulness, right? I think they opposed the enhanced damages on the ground that they had not engaged in litigation misconduct. But I could be wrong. It's a big record. But I looked through this issue very carefully and thought that in connection with the they never actually addressed the no willful infringement. In fact, the facts show that they can't. Since before ERA was founded, Mr. Ahern had opinion letters. He was well aware of the patents. We've got several recent cases that say there's an objective flaw to willfulness. You have to look at the record and see whether they have reasonable defenses. That issue hasn't been addressed by the district court here under the standard that we now apply. Well, the district court found that they had no validity challenge. Well, that's not sufficient. The fact that they lose doesn't mean that they lack a reasonable argument. Okay. You're correct. It's possible that they had some reasonable argument buried in there somewhere. I didn't ever see it. Apparently the district court just didn't either. Right. They didn't mention it, right? Right. Well, the problem is he wasn't either aware or certainly didn't apply the correct standard. As I said, I believe that they never challenged the willfulness. Well, that would be significant. Are you able to point us to anything which confirms that? I can give you a list of the places where they could have and didn't, but I can't. They never put up their hand and said they didn't. I'll ask. Okay. Well, now, the district court did reference Seagate and the objective recklessness requirement and did make a finding of willfulness, but didn't go very far down that road, I guess, is a fair way of saying. I mean, there's a couple of paragraphs in the discussion of willfulness, but the problem is there wasn't a spinning out of the second element that Judge Steinberg was referring to. That's correct. All right. And I do hope you will look at the injunction. I think that the injunction really put us in a very bad spot by saying  is this merely colorably different? You can't get a contempt proceeding. That's right. You can't file another action. But would we get all of these defendants in the same place, and would we get all of the collateral estoppel? And there are huge disadvantages to that for us compared to going back and asking is it merely a colorable difference. And we think we're entitled to be in the same position as any other winning patentee who can do that. Your argument, as I understand it, is the permanent injunction shouldn't address the doubles at all because the district court judge refused to allow them into the case. Exactly. Exactly. You can't have it both ways. You can't refuse to allow it into the case and then rule on it. Exactly. And we would like the opportunity to go back to the district court and say is this merely a colorable difference or not. But isn't the district judge just saying to you what he had said previously when he didn't allow you to file the supplemental complaint? He's just saying that I'm not going to treat any further efforts to bring the doubles into this case as part of the case, whether for purposes of a supplemental complaint or for purposes of contempt proceedings. Well. I mean, you don't like that ruling, but I'm not sure that the inclusion of that language in the injunction did you any more harm than the district court saying, well, I'm not going to change the injunction. Include doubles. If he had left that sentence out. Yeah. Then you would have gone into court and you would have said, please hold them in contempt, and he would have said, no, doubles aren't part of this case. They're sufficiently distinct from this case. I don't think that's what he would have said. I think he said doubles are out because you didn't plead them soon enough, but he acknowledged them as a later developed product. Yeah. And he would have said, okay, we're going to try this case on the facts that we have, and we are then going to consider whether this later developed product is merely colorably different or not. That's what I think he should have done. Instead, he said, you have to go back and file a new complaint. And I don't think he has the authority under the patent statute because that is not protecting a patent right. He's saying we're not like regulative patentees. All right. Well, thank you. Okay. Mr. Ramis? If I may just touch upon the point in the previous argument having to do with entrapment and jurisdiction. Before we get there, did you argue against willfulness in the district court in connection with enhanced damages? We were seeking an evidentiary hearing to be able to cover that issue, and that was denied to us. Is that the only way you raised it? I would have to check the record on that item. With respect to jurisdiction, the entrapment issue that was raised by the court, the entrapment is a good parallel in this case because the infringement requires inducement, and the inducement in this case was by Planos. This isn't a simple case of direct infringement. You need to establish the inducement, and JetDoc has admitted that it induced defendants into providing the Ohio floats. With respect to the most recent issue raised by Cross Appellant having to do with a colorable issue, that is not appropriate in this case because the plaintiffs elected their remedy. They moved at the time of the injunction for a second supplemental amended complaint to add double floats. The court denied that. JetDoc has not appealed from that particular ruling, and there is a fair amount of precedent that you elect your remedy, and if you elect your remedy, you should stick to amending the complaint, and JetDoc did not do so, and three years after the amendment, they should not be permitted to raise this new argument, or should be stopped from raising the new argument. Okay, but if we agree with you that JetDoc didn't properly argue in order to appeal the issue of whether they should have been in the case or not, but I think I understand the argument on the doubles to be the judge said they can't be in the case, and then he put them in the injunction. If they can't be in the case, they can't be in the injunction. How do you respond to that? Subsequently, the court did remove them from the injunction, so the final injunction. When you say remove them, you mean he never struck the language that says they're not included within the scope of the injunction, correct? He did remove it. He removed that sentence? I don't think so. He removed it as a result of a defendant's motion to modify that. Where is your evidence of that? Because I didn't understand that to be the fact. I understood the injunction to continue to exist with the sentence that's excluding doubles. I think you might be confused. We're using the term removed. The judge removed the doubles from the scope of the injunction with the sentence that is in dispute, correct? Now, the next question is did the judge later remove that sentence from the injunction? And are you saying that, yes, the judge took that sentence out of the injunction? Because my reading of the record would suggest that that's not the case. It's my understanding that the judge clarified the language of the injunction so that it did not apply to any floats containing a double float. Right, and that's the sentence we're talking about. The judge said this injunction does not apply to double float ducks, right? Correct. Okay, that sentence has never been taken out of the injunction, correct? Correct. Okay. And if I may, I'd like to cite one case with respect to the proposition on the cross-appeal issue where there is a fair ground of doubt as to infringement by the new device. Plaintiff must propose this by supplemental or new original bill for infringement, and that's the American Foundry case, 79 F. 2nd, 116, 8th Circuit, 1935. Well, we've said that many times. The general proposition is well established. The question is how does it apply in this case. Yes. All right. Very well. Since there is a cross-appeal, Mr. Kinder, I think you have an opportunity for the last word. And I will give you one minute. I take it I'm to limit myself to cross-appeal. Yes, you are. Only to the cross-appeal. And I have little to add except that I think that the statute which provides authority to issue an injunction is to protect patent rights, or I think it's any right protected by patent. And the injunction here puts us at a disadvantage, and I think that it should not, and I think that in that way it was an error of law because he was issuing an injunction about something that he expressly said he wasn't going to rule on. And I think that that was clearly erroneous. Would you feel better if the injunction did not have that language in it, the infamous sentence, but the judge in issuing the injunction had told you in open court, by the way, don't come back to me in contempt with a claim that the doubles are in violation of this injunction because this injunction governs the products that were issued in the case? I would not be concerned about the second part of that sentence, but the part that says don't come back to me with contempt I think is something he shouldn't say. But he's not saying it doesn't infringe. He's not saying it doesn't infringe. He's saying you have a huge potential cost to get back to the place where I think we ought to be. We have to file a complaint, serve the defendants, and jump through all the hoops to get to... You want to be able to argue that the double is not colorably different. Exactly, because I think we've already run this race and carried our burden, and we ought to be in a position to just do that by a contempt motion. And if he says it's more than colorably different, fine. We then could proceed with another claim.